IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2015 AUG -3 AM 9: 23

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____

DEPUTY

LAUREL COPPOCK,

                Plaintiff,

-vs-                                                 Case No.  A-12-CA-953-SS

NATIONAL SEATING AND MOBILITY, INC.;
PERMOBIL, INC.; and LINAK U.S., INC.,
                Defendants.

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant National Seating and Mobility, Inc.'s Traditional and No-Evidence Motion for Summary Judgment on Plaintiff's Implied Warranty Claims [#64], Plaintiff Laurel Coppock's Response [#67], and Defendant National Seating and Mobility, Inc.'s Reply [#75].  Having considered the documents, the file as a whole, and the governing law, the Court enters the following opinion and orders GRANTING the motion.

### Background

This is a diversity suit for personal injuries and property damages based on the alleged failure of an actuator, which controlled the backward-and-forward tilt-level mechanism in an electric wheelchair.  Plaintiff Laurel Coppock describes the actuator as a self-contained unit that includes an electric motor, a drive shaft, and gears that translate the power of the motor into motion of the seat.  She claims the actuator failed on October 16, 2010, causing the chair to suddenly and

unexpectedly tilt forward from a reclined position. The sudden movement of the chair caused Coppock to suffer injuries.

Coppock purchased the wheelchair in 2009 through Defendant National Seating and Mobility, Inc. (NSM). NSM apparently helped Coppock select the wheelchair, which was manufactured by Defendant Permobil, Inc. According to Coppock, the wheelchair actually malfunctioned on occasion before the October 16, 2010 failure. After each failure, NSM employees or agents examined the chair, determined the nature of the problem, ordered replacement parts, and installed those parts on the chair. The last malfunction prior to the October 16, 2010 malfunction occurred in July 2010, and NSM completed the repairs in August 2010.

Coppock filed this lawsuit in October 2012 against Defendants NSM and Permobil, Inc. Compl. [#1]. After Coppock waited four months to actually request summons and execute service, the Court entered a scheduling order on April 18, 2013, including a trial month of August 2014. *See* Order of Apr. 18, 2013 [#24]. Almost a year later, the parties returned to the Court with agreed motions to amend the scheduling order and to amend the complaint. The parties had apparently conducted joint testing of the wheelchair and determined the actuator part was responsible for the wheelchair malfunction. Permobil disclosed Linak U.S. as the manufacturer of the actuator, and therefore the parties agreed Linak U.S. should be added as a defendant in the case. At a hearing, the Court explained the implication of the scheduling order extension as it concerned a trial date, and after the parties indicated their understanding, the Court granted their motions. *See* Order of Mar. 17, 2014 [#32]. The amended scheduling order pushed the trial month to September 2015. *See* Order of Mar. 17, 2014 [#34].

-2-

On February 19, 2015, the Court granted NSM's motion for summary judgment regarding the design allegations against it primarily because Coppock failed to put forth any evidentiary basis for denial. *See* Order of Feb. 19, 2015 [#43]. On March 4, 2015, Defendant Linak U.S. moved for summary judgment on the ground it was not actually the manufacturer of the actuator, a position it conveyed in its answer filed June 2, 2014. *See* Linak U.S.'s Answer [#35] ¶ 43. In responding to the motion, Coppock did not actually bring forth any evidence to dispute this fact and instead requested leave to amend its complaint again and add Linak A/S, a European entity, as a party. *See* Pl.'s Am. Resp. [#49]. Moreover, Coppock requested more time to determine who actually designed, manufactured, sold, or distributed the actuator. *Id.* In other words, almost two-and-a-half years after filing her lawsuit, Coppock had yet to actually name the proper defendant(s) and was seeking leave to amend her complaint six months after the amended pleadings deadline and one week before the discovery deadline. The Court denied Coppock's motion for leave to amend for failure to show good cause and granted Linak U.S.'s motion for summary judgment as the record was undisputed it did not manufacture the actuator at issue. *See* Order of Apr. 29, 2015 [#63].

On April 3, 2015, NSM moved for summary judgment on the following claims against it: (1) products liability claims under Chapter 82 of the Texas Civil Practice and Remedies Code; (2) a negligence claim based on NSM's alleged failure to use ordinary care in repairing the wheelchair; (3) a breach of the warranty to provide good and workmanlike services in performing repairs on the wheelchair; and (4) a generic claim under § 17.46 of the Texas Deceptive Trade Practices Act (DTPA).[1]  Coppock agreed there was no evidence to support her products liability claims under

---

[1] Despite Coppock's suggestions to the contrary, NSM did not move for summary judgment on Coppock's claims for breach of the warranty of suitability for ordinary purposes and breach of the warranty of fitness for a particular purpose. *See* Order of Apr. 29, 2015 [#63] at 8.

§§ 82.003(a)(2) and (a)(6), her negligence claim, and her claim for breach of the warranty of good and workmanlike services. *Id.* at 7. Concerning her claims under § 82.003(a)(3), the Court granted NSM's motion for summary judgment based on Coppock's failure to bring forth pertinent evidence. *Id.* at 7–8. Finally the Court rejected Coppock's request to amend her complaint to include the breach of warranty claims as violations of the DTPA and granted NSM's motion for summary judgment on the DTPA claim for, once again, Coppock's failure to bring forth evidence supporting her cause of action. *Id.* at 8–10.

In that same order, the Court denied NSM's motion for leave to amend its answer to include the affirmative defense of disclaimer. NSM included waiver as an affirmative defense in its original answer but, due to some uncertainty in the case law as to whether waiver includes disclaimer of warranty, wanted to expressly plead disclaimer. Because the Court denied Coppock's motion for leave to amend her complaint and because NSM provided no good cause, the Court denied NSM's motion. *Id.* at 10–11.

On June 29, 2015, Coppock and Defendant Permobil, Inc. filed a Joint Notice of Settlement [#78]. Therefore, the only remaining defendant is NSM, and the only remaining claims are for breach of the warranty of suitability for ordinary purposes[2] and breach of the warranty of fitness for a particular purpose. On May 15, 2015, NSM filed a motion for summary judgment on the two remaining breach of implied warranty claims against it. Coppock responded, NSM replied, and the motion is ripe for the Court's consideration.

---

[2] Coppock actually alleges NSM "breached the warranty that the parts in question . . . were suitable for the ordinary purposes for which they were intended." *See* Am. Compl. [#33] ¶ 37. "Fitness for the ordinary purposes for which goods are used" is a component of merchantibility under section 2.314 of the Texas Business and Commerce Code. TEX. BUS. & COM. CODE § 2.314. As such, the Court treats Coppock's claim for breach of the warranty of suitability for the ordinary purposes for which the goods were intended as a claim for breach of the warranty of merchantibility under section 2.314.

## Analysis

### I.       Legal Standard—Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id*. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence

supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II.     Application

### A.     Exclusion of the warranties

Coppock's claim for breach of the implied warranty of merchantibility is based on section 2.314 of the Texas Business and Commerce Code, which provides the warranty arises in a contract for the sale of goods unless excluded or modified. TEX. BUS. & COM. CODE § 2.314; *Cate v. Dover Corp.*, 790 S.W.2d 559, 560 (Tex. 1990). Her claim for breach of the warranty of fitness for a particular purpose is based on section 2.315 of the Texas Business and Commerce Code, which provides the warranty arises in a contract for the sale of goods unless excluded or modified. TEX. BUS. & COM. CODE § 2.315.

NSM first argues the implied warranties asserted by Coppock were "excluded" within the meaning of sections 2.314 and 2.315. Coppock responds that NSM is improperly trying to argue an unpled disclaimer defense. In its answer filed September 17, 2014, NSM asserted the affirmative defense of "waiver" but did not assert "disclaimer." *See* NSM's Answer [#38] ¶ 58. Subsequently,

NSM moved for leave to amend its answer and add disclaimer as an affirmative defense. *See* Mot. Leave [#59].  NSM was concerned the Texas Supreme Court's decision in *MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132 (Tex. 2014), suggested disclaimer may not be included under the umbrella of waiver.  The Court denied NSM's motion for leave to amend based on its failure to show good cause and to be consistent with its denial of Coppock's motion for leave to amend her complaint. *See* Order of Apr. 29, 2015 [#63] at 10–11.

Now, NSM argues the implied warranties of merchantibility and fitness were excluded.  For this position, NSM relies on the Delivery Combo Tickets (DCTs) signed by Coppock and her mother, Allison Ply, which, according to NSM, contain written, conspicuous exclusions that waive her right to assert a claim for breach of the implied warranties at issue.  DCT forms are signed by NSM customers upon delivery of a wheelchair purchased from, or repaired by, NSM.  NSM provides four different DCTs for the summary judgment record. *See* NSM's Mot. Summ. J. [#64-1] Exs. A-1 (signed by Coppock on December 29, 2009), A-2 (signed by Coppock on March 30, 2010), A-3 (signed by Coppock on May 21, 2010), A-4 (signed by Allison Ply on August 2, 2010).  Each of the DCTs contain the following provision in bold and located essentially immediately above the customer signature line:

> **NSM hereby expressly disclaims all warranties, whether statutory, express or implied (including the implied warranties of merchantibility and fitness for a particular purpose).**

*Id.*

Coppock, citing *MAN Engines*, contends NSM cannot argue "disclaimer" because it is an affirmative defense, which must be pleaded or it is waived. *See* Pl.'s Resp. [#67] at 2–3 (citing *MAN Engines*, 434 S.W.3d at 136–37).  In *MAN Engines*, the court of appeals considered whether

"disclaimer" is an affirmative defense under Texas Rule of Civil Procedure 94. *MAN Engines*, 434 S.W.3d at 136–37. Rule 94 explicitly lists many affirmative defenses, including "waiver," and then adds a catch-all that sweeps in "any other matter constituting an avoidance or affirmative defense." *Id.* at 137 (citing TEX. R. CIV. P. 94). While Rule 94 does not expressly include "disclaimer," the court of appeals in *MAN Engines* concluded disclaimer was included in Rule 94's catch-all provision. *Id.* The Texas Supreme Court agreed. *Id.* The defendant in the case had failed to plead disclaimer and because the court concluded it is an affirmative defense, the defendant could not argue disclaimer. *Id.* at 136–37. The Texas Supreme Court, in a footnote, observed that the defendant "pleaded 'waiver,' but does not argue here that pleading 'waiver' qualifies as pleading 'express disclaimer.'" *Id.* at 136 n.8.

Here, NSM argues that by signing the DCTs, which included language that NSM "expressly disclaims" the implied warranties, Coppock waived her right to pursue subsequently breaches of those warranties. Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Enserch Corp. v. Rebich*, 925 S.W.2d 75, 82 (Tex. App.—Tyler 1996), *writ dism'd by agr.* (July 8, 1996). The party claiming waiver must show: (1) an existing right, benefit or advantage; (2) knowledge, actual or constructive, of its existence; and (3) actual intent to relinquish the right, which can be inferred from conduct. *Slaughter-Cooper v. Kelsey Seybold Med. Grp. P.A.*, 379 F.3d 285, 290 (5th Cir. 2004) (applying Texas law).

The Court sees no reason why waiver cannot apply to the circumstances of this case. The implied warranties of merchantibility and fitness for a particular purpose accompanied the sale of the wheelchair. The language in the DCTs made Coppock aware of these warranties, if she was not already aware, and also made clear NSM disclaimed those warranties. Coppock and her mother

signed the DCTs on multiple occasions over approximately an eight-month period and, in so doing, waived the right to pursue breach of the implied warranties. Coppock complains NSM cannot argue disclaimer when it did not plead disclaimer, but NSM is not arguing disclaimer per se. Rather, NSM argues Coppock waived her rights by signing documents that disclaimed the implied warranties. Coppock cites no authority suggesting this argument is improper or that pleading the affirmative defense of waiver cannot encompass the defense of disclaimer. Indeed, the Texas Supreme Court in *MAN Engines* made clear the defendant in the case had not made this argument, and therefore the court did not consider its merits, one way or the other. *MAN Engines*, 434 S.W.3d at 136 n.8.

In addition to satisfying the elements of waiver, NSM satisfies the elements for disclaimer. Under Texas law, a disclaimer of the implied warranty of merchantibility must: (1) be written or oral; (2) mention the word "merchantibility"; and (3) if in writing, be conspicuous. *See Haynesville Shale Rentals, LLC v. Total Equip. & Serv., Inc.*, No. H-12-0860, 2014 WL 1379884, at *3 (S.D. Tex. Apr. 8, 2014) (citing TEX. BUS. & COM. CODE § 2.316(b)). Disclaimer of the implied warranty of fitness for a particular purpose may be accomplished by general language and does not have to include the word "fitness." *See Omni*, 964 F. Supp. 2d at 817 (citing *Hartford*, 2010 WL 2220443, at *11). Exclusion of the warranty of fitness for a particular purpose must be by a writing and conspicuous. TEX. BUS. & COM. CODE § 2.316(b).

Whether an exclusion of a warranty is conspicuous is a question of law to be determined by the Court. *Cate*, 790 S.W.2d at 560. An exclusion is conspicuous if it is "so written, displayed or presented that a reasonable person against which it is to operate ought to have noticed it." TEX. BUS. & COM. CODE § 1.201(b)(10). Text is conspicuous if it is set off from surrounding words by

symbols, marks that draw attention to it, or larger or contrasting type, font, or color. *Id.*; *Omni*, 964 F. Supp. 2d at 816–17.

Here, the disclaimer language in the DCTs was written in bold-face type and stands out from the surrounding text.  The language also appears immediately above the signature block.  In other words, a reasonable person signing the DCTs should notice the disclaimers.  Coppock offers no argument or evidence to rebut a finding of conspicuousness.  Instead, Coppock only argues consideration of any disclaimer arguments are improper.  *See* Resp. [#67] at 2–3.  Coppock does state, however, that "[i]f the Court is going to consider the disclaimer arguments, Plaintiff seeks leave to amend her Complaint so as to make clear her breach of warranty claims are made under the DTPA as well as generally.  Plaintiff will also want to contest the conspicuousness of the disclaimer in this particular case."  *Id.* at 3.  The Court already denied both Coppock's motion for leave to amend her complaint and NSM's motion for leave to amend its answer.  *See* Order of Apr. 29, 2015 [#63].  The Court's consideration of NSM's waiver argument, which encompasses disclaimer, is not inconsistent with those denials.  Coppock should have contested conspicuousness when NSM briefed the issue in its motion for summary judgment.

In sum, the Court concludes the implied warranties of merchantibility and fitness for a particular purpose were excluded through the DCTs signed by Coppock and her mother on at least four occasions.  As such, NSM is entitled to summary judgment on Coppock's breach claims.

## B.    Insufficient evidence

Regardless of whether Coppock waived her right to pursue breaches of the implied warranties by agreeing to NSM's disclaimer of those warranties, NSM is entitled to summary judgment on the breach claims based on the merits due primarily to a lack of evidence presented by Coppock.

-10-

### 1. Warranty of merchantibility

To prevail on a cause of action for breach of the warranty of merchantibility, a plaintiff must prove: (1) the merchant sold goods to the claimant; (2) the goods were unmerchantable; (3) the claimant notified the merchant of the breach; and (4) the claimant suffered injury. TEX. BUS. & COM. CODE § 2.314 cmt. 13; *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 816 (S.D. Tex. 2013) (citing *Hartford v. Lyndon-DFS Warranty Servs., Inc.*, No. 01-08-00398-CV, 2010 WL 2220443, at *11 (Tex. App.—Houston [1st Dist.] May 28, 2010)). The claimant must show the goods at issue were defective at the time they left the manufacturer's or seller's possession. *Omni*, 964 F. Supp. 2d at 816 (citing *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex. 1989)).

Coppock claims the actuator part failed three times and that NSM replaced the actuator part on two occasions after she purchased the chair in December 2009. Pl.'s Second Am. Compl. [#33] ¶¶ 15, 20, 25. According to Coppock's allegations, the failure occurred when a component piece of the actuator broke:

> The actuator in question has an electric motor which drives a bevel gear. The bevel gear faces a second bevel gear at 90 degrees. The second bevel gear moves a shaft forward and back, so as to effectuate the tilt of the chair with respect to the base. The actuator in question failed because one of the teeth in the driving bevel gear broke off.

*Id.* ¶ 26.

Coppock repeated these allegations on March 23, 2015, in its response to Linak U.S.'s motion for summary judgment, stating:

> As a part of [an] inspection, the actuator was disassembled and it was determined that an internal part of the actuator, a metal gear, had several damaged teeth, and . . . this would explain the sudden movement of which Plaintiff complained.

Pl.'s Am. Resp. [#49] ¶ 7.

Critically, the alleged failure of the actuator and its component parts did not occur until months after each new actuator was installed by NSM. Coppock experienced the first failure in May 2010, approximately five months after purchase. She experienced the second failure in August 2010, approximately three months after NSM replaced the actuator in May 2010. And she experienced the third failure in October 2010, approximately two months after NSM replaced the actuator in August 2010. In other words, at the time NSM completed repairs and installations and the parts left NSM's possession, the actuator and its component parts were working, and there was no apparent defect. The malfunctions occurred months later in each instance. More specifically, the driving teeth of the bevel gear did not break apart until several months after the actuator left NSM's possession.

Relatedly, Coppock knew NSM did not design or manufacture the chair and instead only assembled it. There is no evidence NSM could have detected the manufacturing defect at issue by either vision or feel, particularly a part which was a self-contained unit within the chair. Coppock has presented no evidence to date that NSM was on notice of the defect or had knowledge of the defect at the time it completed assembly or repairs.

In sum, Coppock has presented no evidence the actuator was defective at the time it left the possession of NSM. Therefore, NSM is entitled to summary judgment on Coppock's claim for breach of the warranty of merchantibility.

### 2.      Warranty of Fitness for a Particular Purpose

To prevail on a claim for breach of the implied warranty of fitness for a particular purpose, a plaintiff must prove: (1) the seller had reason to know any particular purpose for which the goods were required at the time of contracting; (2) the buyer actually and justifiably relied on the seller's skill or judgment to select or furnish suitable goods; (3) the buyer notified the seller of the breach

within a reasonable time after the buyer discovered or should have discovered any breach of warranty; (4) the buyer suffered injury; and (5) the seller's breach caused the buyer's injury. *Id.*; *Omni*, 964 F. Supp. 2d at 817. The warranty does not arise unless the particular purpose differs from the usual and ordinary use of the goods. *Coghlan v. Aquasport Marine Corp.*, 73 F. Supp. 2d 769, 774 (S.D. Tex. 1999) (citing Texas cases), *aff'd sub nom. Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449 (5th Cir. 2001). Use of a product according to its function and design is "ordinary use," even if the product is designed for an unusual purpose. *ASAI v. Vanco Insulation Abatement, Inc.*, 932 S.W.2d 118, 122 (Tex. App.—El Paso 1996, no writ).

Coppock alleges NSM breached the warranty of fitness for a particular purpose because the backward-and-forward tilt actuator was defective. *See* Pl.'s Second Am. Compl. [#33] ¶¶ 25–26, 30. Yet for the same reasons, Coppock alleges NSM breached the warranty of fitness for ordinary purposes (i.e., merchantibility). *Id.* ¶ 30.[3] The allegedly defective tilt-level mechanism cannot amount to both a breach of the warranty of fitness for a particular purpose and breach of the warranty of fitness for ordinary purposes. Moreover, Coppock's allegations admit the function and design of the actuator is for forward and backward tilting. *Id.* ¶ 12–13. Coppock makes no allegation, and there is no evidence, that she purchased or used the actuator for any purpose other than forward and backward tilting. Therefore, even though Coppock may have had unusual medical needs that were satisfied by the forward-and-backward tilt feature, there is no evidence of a "particular purpose" for the actuator.

------------

[3] Paragraph 30 of Coppock's complaint reads as follows: "As a result of the failure of the part or parts on the four occasions outlined above, the PERMOBIL C 500 and its tilt-level mechanism was not fit for the ordinary purposes for which it was intended. As a result of the failure of the part or parts on the four occasions outlined above, the PERMOBIL C 500 and its tilt-level mechanism was not fit for the particular purposes for which it was selected." Pl.'s Second Am. Compl. [#33] ¶ 30. By equating these two warranties, Coppock illustrates her failure even to adequately plead a breach of the warranty of fitness for a particular purpose.

Therefore, NSM is entitled to summary judgment on Coppock's claim for breach of the warranty of fitness for a particular purpose.

## Conclusion

This lawsuit has unfolded in a bizarre and unfortunate manner. When filed, the case appeared to be a straightforward negligence and products liability case based on the failure of a wheelchair and the consequent injury to the plaintiff. Yet instead of proceeding in typical fashion, the case has lagged painfully behind schedule due primarily to a failure of plaintiff's counsel to diligently litigate his client's case. As only the most recent example, Coppock's counsel, in responding to NSM's motion for summary judgment, attached the reports of two experts, Ciro Ramirez and Clark McDonald, who were retained by Permobil in this case to provide opinions regarding the failure of the actuator. *See* Pl.'s Resp. [#67] ¶¶ 12, 19, 20; *id.* [##67-3, -4] Exs. 3 (Ramirez Report), 4 (McDonald Report). Neither report, however, is accompanied by a sworn affidavit, making both inadmissible. In the response, Coppock's counsel asks for "additional time in order to get the reports of Mr. Ramirez and Dr. McDonald in admissible form. This is addressed in a separate [m]otion under Rule 56, to be filed today." Pl.'s Resp. [#67] ¶ 22. Coppock's counsel did not file a separate motion that day (June 4, 2015), and he has not taken any action in the six weeks since he filed the response to get the expert reports in admissible form. As a result, there is no expert testimony regarding the sole manufacturing defect at issue in the case. The lack of diligence by Coppock's counsel is as remarkable as it is consistent with his behavior since he filed this lawsuit nearly three years ago.

While the attorney conduct has befuddled the Court, the real concern lies in that conduct's result, which is a set of allegations that have been unsupported with any evidence. Therefore, the

Court must grant NSM's motion for summary judgment both due to the exclusion of the implied warranties and for a lack of evidence. The Court only hopes the settlement with the wheelchair manufacturer, Permobil, was sufficient to compensate Ms. Coppock.

Accordingly,

IT IS ORDERED that Defendant National Seating and Mobility, Inc.'s Traditional and No-Evidence Motion for Summary Judgment on Plaintiff's Implied Warranty Claims [#64] is GRANTED.

SIGNED this the _31ˢᵗ_ day of July 2015.

_Sam Sparks_
SAM SPARKS
UNITED STATES DISTRICT JUDGE